UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PLASTIC SURGERY CENTER, P.A., <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED HEALTHCARE INSURANCE CO. and MULTIPLAN, INC., <br><br> *Defendants.* | Civil Action No. 3:21-cv-12441 <br><br> **MEMORANDUM AND ORDER** |

This case is before the Court on Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (FAC), (ECF No. 12, 16), and Plaintiff's Cross-Motion for Leave to File a Second Amended Complaint (SAC). (ECF No. 25). The Court heard oral argument on January 5, 2021. For the reasons that follow: Defendant UnitedHealthcare Insurance Co.'s motion to dismiss is denied (ECF 12); Defendant MultiPlan, Inc.'s motion to dismiss is denied (ECF No. 16); and Plaintiff's cross-motion for leave to file a Second Amended Complaint is denied (ECF No. 25).

The Court has diversity jurisdiction pursuant to 28 U.S.C § 1332 because Plaintiff is a citizen of New Jersey while Defendants are citizens of New York and Connecticut, and Plaintiff alleges damages in excess of $75,000. (FAC ¶¶2-3, 17, ECF No. 3). Venue is proper in the District of New Jersey under 28 U.S.C § 1391(b), because a substantial part of the events giving rise to Plaintiff's claims took place in New Jersey. (*Id.* at ¶¶5-18).

1

I.

Under Fed. R. Civ. P. 8(a)(2), a complaint "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss asserts a "failure to state a claim upon which relief can be granted." Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted." "In deciding a Rule 12(b)(6) motion, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff." *United States v. Loving Care Agency, Inc.*, 226 F. Supp. 3d 357, 362-63 (D.N.J. 2016). The plaintiff's factual allegations must give rise to a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court should disregard legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory statements." *Santiago v. Warminster Township*, 629 F.3d 121, 128 (3d. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

The Third Circuit set forth a three-part test for determining whether or not a complaint may survive a motion to dismiss for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* at 130 (alteration in original) (quoting *Iqbal*, 556 U.S. at 675, 679).

2

## II.

In the FAC, TPSC brings claims for breach of contract,[1] promissory estoppel,[2] and negligent misrepresentation[3] against United and MultiPlan. (FAC at ¶¶19-47).

According to the FAC, Plaintiff, The Plastic Surgery Center, P.A. ("Plaintiff" or "TPSC") is a professional corporation which performs cosmetic and reconstructive surgery. (FAC at ¶1, 5). TPSC's patient, B.N., "was diagnosed with chronic paralysis of the right hemidiaphragm due to right phrenic nerve injury and cervical radiculopathy that failed to improve despite watchful waiting and medical optimization." (*Id.* at ¶6). At the time, B.N. was covered by a health insurance policy provided by Defendant UnitedHealthcare Insurance Co. ("United"). (*Id.* at ¶2).

Physicians at TPSC determined that a seven step medical procedure including phrenic nerve repair surgery ("the Procedure") could alleviate B.N.'s ailments. (*Id.* at ¶7). TPSC physicians performed the Procedure on April 12, 2019, and TPSC charged a total of $192,120.00 ("the Claim"). (*Id.* at ¶¶9-10). United paid a total of $13,292.01 to TPSC; TPSC "appealed" this, and a representative of MultiPlan thereafter contacted TPSC to negotiate the balance of the Claim on behalf of United. (*Id.* at ¶¶11-13).

---

[1] Under New Jersey law, there are four elements to a claim of breach of contract:

> first, that the parties entered into a contract containing certain terms; second, that [the] plaintiff did what the contract required [the plaintiff] to do; third, that [the] defendant did not do what the contract required [the defendant] to do, defined as a breach of the contract; and fourth, that [the] defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff.

*Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019).

[2] There are four elements to a promissory estoppel claim: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021).

[3] The elements of negligent misrepresentation are: "[a]n incorrect statement, negligently made and justifiably relied upon, [and] . . . economic loss . . . sustained as a consequence of that reliance." *Cadre v. ProAssurance Cas. Co.*, 257 A.3d 1175, 1192 (N.J. Super. Ct. App. Div. 2021) (quoting *Green v. Morgan Props.*, 73 A.3d 478, 493-94 (N.J. 2013)).

3

On October 7, 2020, MultiPlan offered TPSC two written settlements in the amount of $80,775.20 for Dr. Matthew Kaufman's services and $72,920.80 for Dr. Kari Cohen's services. TPSC accepted and signed a document entitled the Letter Agreement for each physician. (FAC ¶¶14 – 15). It submitted two integral documents bearing the captions "Letter of Agreement," one for each surgeon on letterhead for "Data iSight."[4] (ECF No. 13-1 at 74-80). The Letters of Agreements are perplexing in several ways:

1. At oral argument, MultiPlan's attorney indicated that MultiPlan was "sort of an agent" of United. This engenders questions of its authority to offer a settlement to TPSC.

2. The Letters of Agreement are signed only by TPSC. In fact, the form Letter of Agreement only has a signature line for the providers, and not for MultiPlan or United. (ECF No. 13-1 at 74-80). If there is no mutual consent by all parties, is there a settlement? This gives rise to the issue that some other evidence is necessary to construe the intent of the document.

3. United argues that no contract was formed because the Letters of Agreements state, in part, that TPSC "agrees . . . to accept the adjusted charge of $80,775.20 [5] as payment in full for the [Procedure] provided that payment is processed within [twenty] days of receipt of faxed signature." (*Id.*). United asserts that no "payment" was made within twenty days, therefore no contract was ever formed, (ECF No. 12 at 13-14), but the language of the Letters of Agreement is different. The Letters of Agreement state that payment must be "processed" within twenty days for the agreements to become effective. (ECF No. 13-1 at 74-80). The use of the word "processed" is different from "paid" or

---

[4] Data iSight is a "product" of MultiPlan. (ECF No. 16-1 at 7 n.3).

[5] The first letter pertained to services performed by Dr. Kaufman. The second letter pertained to services by Dr. Colen and had an adjusted charge of $72,920.80. (ECF No. 13-1 at 74-80).

4

"tendered" or "received." As such, what each party meant by use of the word "processed" is a critical determination.

4. MultiPlan proffers a defense that relies on a term of the Letters of Agreement. That is, the Letters of Agreement contain a provision that MultiPlan is not responsible for any payments, and therefore cannot be held liable to TPSC. (ECF No. 16-1 at 9-12). The provision reads: "[MultiPlan] is not a payor, and is not financially responsible for any payments due to the provider . . . ." (ECF No. 13-1 at 74-80). How can one Defendant (United) argue that no contractual relationship was reached when its alleged agent (MultiPlan) argues this term of the Letters of Agreement should be enforced?

5. TPSC argues that the Letters of Agreement establish the entire relationship between it and United, and it is not subject to any ERISA provisions. (ECF No. 25-1 at 23-27). The problem with that assertion is that there was another integral document submitted wherein TPSC applied for payment as an assignee of BN, the subscriber. (ECF No. 13-1 at 45). As such, the rights and remedies of the parties may substantially change if ERISA is invoked.

Viewing the FAC's allegations in a light most favorable to TPSC, the FAC sets forth a plausible claim that a contract – embodied in the Letters of Agreement – was entered, and that United and MultiPlan breached same by not paying the full amount of the charges. *Loving Care Agency*, 226 F. Supp. 3d at 362-63. Similarly, the remaining counts including promissory estoppel and negligent misrepresentation are also pled to a degree that there appears to be a plausible cause of action; however, the above factual issues require discovery.

### III.

Both United and Multiplan argue that all of TPSC's state law claims against them are preempted by ERISA and therefore fail to state a plausible claim. (ECF No. 12 at 17-21); (ECF No. 16-1 at 12-15). Essentially, both Defendants argue ERISA preempts any state law claim that

5

"relates to" an ERISA plan, including B.N.'s health insurance plan, and that this Court would have to look to the terms of the plan to determine whether TPSC is entitled to payment. (*Id.*). Further, they deny that payment to TPSC was negotiated independent of B.N.'s health insurance plan. (*Id.*). MultiPlan adds that it cannot be liable because ERISA limits money judgments to the plan. (ECF No. 16-1 at 14-15). TPSC counters that its claims cannot be preempted by ERISA because TPSC is not an in-network provider participating in United's ERISA plan. (ECF No. 25-1 at 18-26).

In 1974, Congress enacted ERISA to set forth "uniform federal standards" for healthcare plans. *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 225 (3d Cir. 2020). "To provide a uniform enforcement mechanism" under ERISA, Congress established federal causes of action under section 502(a) of ERISA (29 USC § 1132(a)) and in that same section, enacted "a broad express preemption provision." *Id.* at 226. The preemption provision provides:

> the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 USCS § 1003(a)] and not exempt under section 4(b) [29 USCS § 1003(b)].

29 USC §1144(a). ERISA's preemption provision applies to both state statutes and common law claims. *Plastic Surgery Center*, 967 F.3d at 226.

The Supreme Court's test for whether a state law "relates to" an ERISA plan is whether the state law: (1) contains a "reference to" or (2) a "connection with" the plan. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016). A state law contains a "reference to" an ERISA plan "[w]here a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . ." *Id.* (quoting *Cal. Div. of Lab. Stds. Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 325 (1997)). A state law has a "connection with" an ERISA plan if the law "'governs . . . a central matter of plan

administration' or 'interferes with nationally uniform plan administration.'" *Id.* (quoting *Egelhoff v. Egelhoff*, 532 U. S. 141, 148 (2001)).

In *Plastic Surgery Center*, the Third Circuit held that TPSC's "relationship" as an out-of-network provider of Aetna, an ERISA plan administrator, "d[id] not itself create an impermissible 'connection with' the plans in th[at] case." 967 F.3d at 237. Here, TPSC is attempting to employ the same strategy to avoid invoking ERISA, and thereby prosecute claims for breach of contract or promissory estoppel that are not preempted by ERISA. *Id.* at 231-34.

There is some merit to Defendants' arguments, but as the Court explained, there are significant factual questions regarding the alleged agreement the parties reached and how the agreement relates to B.N.'s ERISA plan. As such, deciding the ERISA issue is best reserved for future motion practice.

## IV.

Motions for leave to amend a complaint under Federal Rule of Civil Procedure 15 are granted "liberally." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 201 (3d Cir. 2019). A court should only deny such a motion if: "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Id.* (internal quotation marks omitted). Relevant here, an amendment is futile if it could not "withstand a renewed motion to dismiss." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 346 n.34 (3d Cir. 2019).

TPSC's Motion for Leave to File a Second Amended Complaint is denied. Counts Four through Six of the SAC allege alternative theories of breach of contract, promissory estoppel, negligent misrepresentation against United based on representations United made to TPSC agreeing to pay TPSC at the "network level." (SAC at ¶¶8-12, 39-56). At oral argument, counsel for United submitted that United made oral and perhaps written representations that it would pay TPSC an agreed-upon sum for the Procedure. However, the SAC fails to allege any

7

such representations with specificity and instead simply asserts that United and TPSC entered into a "Single Case Rate Agreement" whereby United would pay TPSC according to certain "CPT" codes. (*Id.* at ¶¶8-12). Therefore, the proposed amendments to the FAC would be "futile," *Wolfington*, 935 F.3d at 201, and the new counts in the SAC would not "withstand a renewed motion to dismiss," *Sweda*, 923 F.3d at 346 n.34.

## ORDER

**THIS MATTER** having come before the Court on Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (FAC), (ECF Nos. 12, 16), and Plaintiff's Cross-Motion for Leave to File a Second Amended Complaint (SAC). (ECF No. 25); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this 31st day of March, 2022,

**ORDERED** that Defendant UnitedHealthcare Insurance Co.'s Motion to Dismiss (ECF No. 12) is denied.

**ORDERED** that Defendant MultiPlan's Motion to Dismiss (ECF No. 16) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to file a Second Amended Complaint (ECF No. 25) is denied.

_____
PETER G. SHERIDAN, U.S.D.J.